THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIDAL LEE VINCENT,<br><br>            Petitioner,<br><br>   v.<br><br>PAT GLEBE,<br><br>            Respondent. | CASE NO. C12-0384-JCC<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

This matter comes before the Court on Petitioner Vidal Lee Vincent's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1), the Report and Recommendation ("R&R") of the Honorable Brian A. Tsuchida, United States Magistrate Judge (Dkt. No. 14), and the Petitioner's objections thereto. (Dkt. No. 22.) Having thoroughly considered the parties' briefing and the Report and Recommendation, Petitioner's objections, the governing authorities, and the balance of the record, the Court adopts the R&R and dismisses Mr. Vincent's § 2254 petition.

I.     **BACKGROUND**

Petitioner Vidal Lee Vincent ("Petitioner") is currently incarcerated at Stafford Creek Corrections Center in Aberdeen, Washington. (Dkt. No. 14.) He is serving a 366-month sentence imposed for his January 30, 2004 conviction for First Degree Attempted Murder, First Degree Assault, two counts of Second Degree Assault, Drive-by Shooting, and Second Degree Unlawful

Possession of a Firearm.[1] (Dkt. No. 11, Ex. 1.) Mr. Vincent's conviction followed a trial in which he was tried jointly with his brother, Mr. Vinson Carter Vincent; together, the two brothers were charged with committing two drive-by shootings that occurred on August 9, 2003, in South Seattle.[2] As a result of the latter drive-by shooting, an individual, [S.T.], was shot in the chest and suffered severe injuries. It was this shooting for which the State of Washington charged and convicted Mr. Vincent for Attempted First Degree Murder.

As quoted in the Report and Recommendation, the Washington Court of Appeals summarized the facts relevant to Petitioner's case as follows:

> On August 9, 2003 at approximately 7 p.m., nine-year-old [J.H.] and 12-year-old [F.G.] were riding their bikes in south Seattle after a "read and play" session at their church. A green Cadillac approached and slowed down, and the passenger fired a handgun in the direction of the two boys. The bullet hit the sidewalk next to their feet.
>
> Later that evening, 16-year-old [S.T.] was standing on a corner on Rainer Avenue South. A green Cadillac drove up with its passenger lying fully reclined. The driver reached across and fired one shot at [S.T.], hitting him in the chest. Jerome Robinson was standing behind [S.T.], and the bullet grazed his hand.
>
> [S.T.] was taken to Harborview Medical Center. He had lost 40 percent of his blood and was in shock. Surgery was required to stem the bleeding into [S.T.'s] chest. Part of his lung was removed. In the recovery room, he told his mother that Vinson Carter-Vincent was the shooter. [S.T.] recovered, but disappeared during the trial and did not testify.
>
> Three days after the shooting, Detective Bergmann visited [S.T.] in the hospital. Although [S.T.] was initially uncooperative, he identified the driver of the car by pointing at a montage photo, and provided the name of the passenger. Bergmann testified at trial that after his interview with [S.T.], Vidal Vincent became the second suspect in the shooting.
>
> [J.] and [F.] each identified Vidal Vincent as the person who fired at them. They also described the gun and the green Cadillac, which had a damaged trunk.

---

[1] The Court notes that Petitioner's convictions on the First Degree Assault charges were subsequently vacated on double jeopardy grounds. (*See* Dkt. No. 11, Ex. 1 at 1, 7; Ex. 3 at 4.)

[2] Unless otherwise noted, any reference to "Mr. Vincent" refers to Petitioner.

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 2

> In Vinson Carter-Vincent's apartment, police found a manual for a Glock semi-automatic handgun matching the boys' description. Multiple witnesses identified the green Cadillac as Vinson Carter-Vincent's car, and identified Vinson Carter-Vincent as the driver and Vidal Vincent as the passenger before and during the shooting of [S.T.].
>
> The State charged Vidal and Vinson with first degree attempted murder and first degree assault in the shooting of [S.T.]; two counts of second degree assault, arising out of the shot fired at the boys; drive-by shooting, and unlawful possession of a firearm.
>
> While being held in the King County jail before trial, Vinson occupied a cell near Jason Speek, and talked to Speek about shooting [S.T.]. The State sought to introduce Vinson's statements to Speek. Vidal objected and sought severance, arguing that Speek's testimony would incriminate him. The court denied the motion to sever, and entered a detailed ruling permitting Speek's testimony but requiring that Speek omit all reference to Vidal and refer only to "another person."
>
> Neither Vidal nor Vinson testified at trial. Vinson's girlfriend and her mother both testified the brothers had been with them the entire evening. Speek testified in detail about Vinson's account of the shooting of [S.T.] and the surrounding events, including repeated references to another occupant of the Cadillac, referred to as "the other guy." The court instructed the jury that it could not consider an incriminating out-of-court statement made by one defendant as evidence against the other defendant.

(Dkt. No. 11, Ex. 3 at 2–4 (footnotes omitted).)

Following his conviction, Petitioner appealed. In his direct appeal, Petitioner argued among other things that (i) the admission of Mr. Speek's testimony, which contained the out-of-court statements of Petitioner's nontestifying co-defendant and reference to "the other guy," violated his Sixth Amendment Confrontation Clause right under *Bruton v. United States*, 391 U.S. 123 (1968); (ii) that the admission of the victim's statements to Detective Bergmann, which identified Petitioner as the passenger of the car from which the shot was fired, violated his Sixth Amendment Confrontation Clause right under *Crawford v. Washington,* 541 U.S. 36 (2004); and (iii) that a photomontage used was impermissibly suggestive. (Dkt. No. 11, Ex. 3 at 1–2.) The Court of Appeals affirmed Petitioner's convictions, concluding that (i) while the introduction of Mr. Speek's testimony and the victim's identification of Petitioner did violate Mr. Vincent's

Confrontation Clause rights, any error was harmless beyond a reasonable doubt; and (ii) the out of court identifications were sufficiently reliable, such that Mr. Vincent's due process claim failed. (*Id.*, Ex. 3 at 2; *see State v. Vincent*, 120 P.3d 120 (Wash. App. 2005)). Petitioner thereafter moved for reconsideration, but his motion was denied. (*Id.*, Ex. 8A, 8B.) Mr. Vincent then filed a petition for review in the Washington Supreme Court, which was denied without comment on December 5, 2006. (*Id.*, Ex. 10.) The Court of Appeals issued its mandate terminating direct review on February 7, 2007. (*Id.*, Ex. 11.)

Petitioner subsequently filed two personal restraint petitions in the Washington courts on unrelated grounds, both of which were ultimately denied. (*See* Dkt. No. 14 at 3–4.) Having exhausted his state-court remedies, Mr. Vincent filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2254 on March 6, 2012. (Dkt. No. 1.) He raises three grounds for relief:

> **GROUND ONE:** Sixth Amendment Confrontation Clause error under *Bruton* had a substantial and injurious effect or influence in determining jury's verdict.
>
> **GROUND TWO**: Sixth Amendment Confrontation Clause error under *Crawford* had a substantial and injurious effect or influence in determining jury's verdict.
>
> **GROUND THREE:** Impermissibly suggestive photomontage deprived Mr. Vincent of his Fourteenth Amendment Due Process rights under *Simmons*.

(*Id.* at 6–9.)

The Honorable Brian A. Tsuchida, United States Magistrate Judge, submitted a Report and Recommendation to the undersigned in which he recommends that the Court dismiss Mr. Vincent's petition with prejudice. Specifically, Judge Tsuchida concluded that with regard to Petitioner's Confrontation Clause claims, the errors recognized by the Washington Court of Appeals did not have a "substantial and injurious effect or influence in determining the jury's verdict" because there was "ample evidence" that Petitioner both participated in the shooting of [S.T.] and knew that his conduct would facilitate the shooting. (Dkt. No. 14 at 10–13.) With regard to Mr. Vincent's third claim, Judge Tsuchida concluded that Petitioner failed to establish that his due process rights were violated because (i) the photomontage was not unduly suggestive

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 4

1  according to the trial transcript, and even if the photomontage drew attention to Petitioner's
2  photograph, (ii) the Court of Appeals reasonably concluded that the identification procedure was
3  not impermissibly suggestive and that there was sufficient indicia of reliability. (Dkt. No. 14 at
4  15.)

5  Petitioner objects to each of the R&R's conclusions. With regard to the Confrontation
6  Clause violations, Mr. Vincent argues that the R&R's summary conclusion that there was "ample
7  evidence" of his guilt is not supported by the record and not explained in the R&R's analysis;
8  that the R&R failed to apply the five non-exclusive *Van Arsdall* factors in determining whether
9  the constitutional errors had a "substantial and injurious effect" on the jury's verdict; and further,
10 that the R&R failed to properly apply the "substantial and injurious" effect standard as
11 established in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Mr. Vincent further objects to Judge
12 Tsuchida's conclusion regarding the photomontage because, he argues, "[t]he Magistrate did not
13 even view the photomontage in question, and thus, failed to weigh the 'corrupting effect of the
14 suggestive[ness] against other factors indicating whether the identifications may [be]
15 independently unreliable.'" (Dkt. No. 22 at 10 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114
16 (1977)).

17 Upon review, the Court agrees with Judge Tsuchida's recommendations. While the R&R
18 does not analyze the trial transcript in depth in its harmless error analysis, it references the very
19 clear discussion of the Washington Court of Appeals, and reaches the same conclusion.
20 Nonetheless, this Court has conducted its own review and concludes that the Confrontation
21 Clause violations in Mr. Vincent's trial did not have a substantial and injurious effect on the
22 jury's verdict. As to Mr. Vincent's third objection, the Court finds that Judge Tsuchida
23 appropriately analyzed Petitioner's claim under the applicable law. Accordingly, the Court
24 overrules Mr. Vincent's objections and adopts the Report and Recommendation.
25 //
26 //

## II. DISCUSSION

### A. Standard of Review

Rule 8(b) of the Rules Governing Section 2254 Cases provides that "[a] judge may, under 28 U.S.C. § 636(b), refer the petition to a magistrate judge to conduct hearings and to file proposed findings of fact and recommendations for disposition." Rule 8(b). Upon review, the Court "must determine *de novo* any proposed finding or recommendation to which objection is made [and] may accept, reject, or modify any proposed finding or recommendation." *Id.* Accordingly, the Court considers *de novo* those conclusions to which Mr. Vincent objects.

### B. Applicable Law Under 28 U.S.C. § 2254

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs writs of habeas corpus for claims adjudicated in state court. *Woodford v. Garceau,* 538 U.S. 202, 204, 207 (2003). Section 2254 establishes several limits on a federal court's power to grant *habeas* relief to a state prisoner. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1398 (2011). A federal court may only grant a *habeas* petition if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determine by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28. U.S.C. § 2254(d).

Under the "unreasonable application" clause, "[t]he state court unreasonably applies clearly established federal law if it 'either [(]1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or [(]2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.'" *DeWeaver v. Runnels*, 556 F.3d 995, 997 (9th Cir. 2009) (quoting *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th Cir. 2002)). Only if the application is "objectively unreasonable [may] a state court decision may be overturned." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The burden lies with the petitioner to show that the state court decision is objectively unreasonable. *See Harrington v. Richter,* 131 S. Ct. 770, 784, 786–87 (2011).

### C.   Confrontation Clause Violations

The Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 403–405 (1965), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Here, the Washington Court of Appeals agreed with Petitioner that two Confrontation Clause errors plagued his trial. The first occurred when the statements of Mr. Vincent's nontestifying co-defendant, which referenced "the other guy" present during commission of the shooting, were introduced through the testimony of Jason Speek, the co-defendant's cell-mate. (Dkt. No. 11, Ex. 3.) The second occurred when Detective Bergmann testified that he spoke with the victim of the shooting in the hospital, and thereafter concluded that Petitioner was the second of two suspects. (*Id*.) In its Answer to Mr. Vincent's petition, the State does not dispute the Washington Court of Appeals' conclusion as to the first error, but argues instead that the error was harmless. (Dkt. No. 8 at 10 ("Although the admission of such statements by the cellmate may have been in error[,] any Confrontation Clause violation was harmless[.]"). As to the second error, the State briefly disputed the Washington Court of Appeals' conclusion that there was an error by arguing that there was no actual "admission" of any statement by the victim. (*Id.* at 18.) The State then devotes most of its argument to the harmless error aspect of the Washington Court of Appeals' determination.

Upon its own review, the Court agrees with the conclusions of the Washington Court of Appeals and Judge Tsuchida that Mr. Vincent's Sixth Amendment Confrontation Clause right was violated in two respects, and no party disputes that conclusion at this stage. However, notwithstanding the existence of Confrontation Clause violations, Mr. Vincent is only entitled to relief if, under applicable law, the errors were sufficiently prejudicial. For the reasons explained below, the Court concludes that the introduction of Mr. Speek's and Detective Bergmann's testimony constitutes harmless error under the appropriate standard.

//

### 3. Harmless Error

The United States Supreme Court has held that a constitutional error in a trial will not warrant *habeas* relief when the error is harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993) (internal quotation marks and citation omitted). An error is harmless unless the violation in question "had [a] substantial and injurious effect or influence on the verdict, or if [the Court is] 'left in grave doubt' as to whether there was such an effect. *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010); *see Kotteakos v. United States*, 328 U.S. 750, 764 (1946) (the issue is "what effect the error had or reasonably may be taken to have had"). "'Grave doubt' exists in the 'unusual' circumstance where, 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Pulido*, 629 F.3d at 1012 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). A federal court must assess the prejudicial impact of a constitutional error in a state-court criminal trial under *Brecht* regardless of whether the state appellate court recognized the error and reviewed it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in *Chapman v. California,* 386 U.S. 18 (1967).[3] *Fry v. Pliler*, 551 U.S. 112, 121–122 (2007).

To determine whether the error had substantial and injurious effect or influence, the Supreme Court has long explained that "[t]he inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence." *Merolillo v. Yates*, 663 F.3d 444, 454 (9th Cir. 2011) (quoting *Kotteakos*, 328 U.S. at 765). To structure the analysis in the context of a Confrontation Clause violation, the Court applies the five non-exclusive factors propagated by

---

[3] The Court notes that the State fails to cite the appropriate standard in its briefing, notwithstanding binding precedent rejecting its very argument. The Supreme Court in *Fry* clarified that the *Brecht* test "obviously subsume[d]" the "more liberal AEDPA/*Chapman* standard[,] which requires only that the state court's harmless-beyond-a-reasonable-doubt determination be unreasonable." *Fry,* 551 U.S. at 120 (2007). Since *Fry,* the Ninth Circuit follows the *Brecht* test. *See Merolillo v. Yates*, 663 F.3d 444, 454 (9th Cir. 2011) (rejecting argument that the AEDPA/*Chapman* standard, as applied in *Inthavong v. Lamargue*, 420 F.3d 1055, 1059 (9th Cir. 2005), governs the harmless error analysis on collateral review)).

the Supreme Court in *Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986). *Id.* at 455. These factors are: (1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution. *Merolillo*, 663 F.3d at 455 (citing *Van Arsdall,* 475 U.S. at 684); *accord Ocampo v. Vail,* 649 F.3d 1098 (9th Cir. 2011).

Here, Mr. Vincent objects to the Report and Recommendation's conclusion that the constitutional errors were harmless. Specifically, Petitioner asserts that the R&R failed to apply the five non-exclusive *Van Arsdall* factors[4]; that the R&R's summary conclusion that there was "ample evidence" of his guilt is not explained in the R&R's analysis; and ultimately, that the R&R failed to properly apply the "substantial and injurious" standard as established in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). In light of Mr. Vincent's objections, the Court addresses *de novo* whether the constitutional errors discussed above had a substantial and injurious effect on the jury's verdict. Applying the *Van Arsdall* factors to Mr. Vincent's claim, the Court concludes that the admission of Mr. Speek's and the victim's statements did not have such an effect on the jury's verdict.

The Court begins by considering the importance of the witnesses' testimony to the prosecution's case and determining the overall strength of the prosecution. *Merolillo*, 663 F.3d at 455. As the Washington Court of Appeals explained, the case against Mr. Vincent was far from weak. The State introduced numerous witnesses to place Mr. Vincent and his brother at or near the scene of the shooting, ranging from one or two hours to just minutes before [S.T.] was shot. For example, Jerome Robinson, who recognized the brothers from the area, saw the two brothers—and specifically, Mr. Vincent in the passenger seat—cruising through the area two blocks away just one to two hours before [S.T.] was shot from the green Cadillac, which was

---

[4] The Court notes that the Washington Court of Appeals considered the *Van Arsdall* factors in reaching its harmless error conclusion. (Dkt. No. 11, Ex. 3 at 16.)

identified as the car from which the shot was fired by numerous witnesses. (Dkt. No. 11, Ex. 42 at 119.) At the moment the shooting occurred, Mr. Robinson (who was present) was facing the opposite direction—and thus, did not purport to have identified Mr. Vincent at that very moment—but confirmed that it was the Cadillac that he had seen earlier from which the shot was fired. (*Id.* at 112–31.) Additionally, the two children who were targeted in the first drive-by shooting that occurred shortly before the shooting of [S.T.] identified Vidal as the passenger in the green Cadillac—and indeed, identified Mr. Vincent as the shooter in that instance. (Dkt. No. 11, Ex. 35 at 143–45, 152–53, 171.) Another witness, Mr. Londel Walker, identified the brothers as being in the green Cadillac shortly before the shooting (Dkt. No. 11, Ex. 38 at 25), and Mr. Kevin Williams witnessed the shooting from a nearby street corner. (Dkt. No. 11, Ex. 37 at 55–91.) While admitting that he could not tell the brothers apart all the time, Mr. Williams identified them as being in the green Cadillac at the nearby QFC. He further explained that the brothers left the QFC parking lot in the green Cadillac, waited at a light, and then slowly pulled up to where [S.T.] was standing on the curb lane; as he saw the car drive by, the passenger seat was "laid all the way back." (*See id.*) From this position, with the driver's arm draped over the passenger, the shot was fired at (and hit) [S.T.]. (*Id.*)

Thus, while these witnesses did not testify that, with one hundred percent certainty, they saw Mr. Vincent in the car at the very moment the shot was fired, such proof is not required, contrary to Mr. Vincent's assertions. The proof was circumstantial and "ample", to put it in Judge Tsuchida's words, and these witnesses had no apparent motive to lie about what they witnessed. Taken together, this testimony presents a strong case that Mr. Vincent was in a green Cadillac with his brother throughout the evening and when the shooting of [S.T.] occurred, and by hanging out of the green Cadillac looking for certain individuals, and then reclining his seat well before the shot was fired, he facilitated his brother's conduct. Judge Tsuchida was correct to conclude that "ample evidence" existed in the trial transcript to support such a conclusion. In short, contrary to Mr. Vincent's assertions, the State's case against him was indeed a strong one.

The improperly admitted statements were of course relevant and incriminating—and thus, somewhat important. As the Court of Appeals noted, Mr. Speek's testimony provided the most comprehensive review of why the brothers did what they did, and the victim's identification provided one additional identification to those discussed above. (Dkt. No. 11, Ex. 3 at 10, 16.) However, given the weight of the additional evidence, the Court cannot say that it was so important as to favor a finding that the errors were not harmless. The case did not depend on the introduction of these statements, and they merely served to further bolster an already strong prosecution.

Indeed, the Court finds that the improper testimony was cumulative of other evidence presented. In short, Jason Speek's testimony and the victim's identification placed Mr. Vincent at the scene and explained why he was in the car with his brother. However, other witnesses (as discussed above) placed Mr. Vincent in the car at various time before the shooting, identified the car at the time of the shooting, and explained that the passenger reclined his seat so as to facilitate Vinson's shooting of [S.T.]. Other witnesses also testified as to possible motives, such as one of the Vincent brothers having been in a fight with the victim's brother (Dkt. No. 11, Ex. 42 at 130–31), as well as gang associations and motives. (*See* Dkt. No. 11, Ex. 38 at 27; Ex. 39 at 140–52.) Ultimately, the improper testimony in this matter, while incriminating, was cumulative of the other testimony admitted against Mr. Vincent.

Finally, the Court does note that Mr. Vincent did not have the opportunity to cross examine the nontestifying witnesses, and this factor accordingly favors a finding that the errors were not harmless. However, given the strength of the prosecution's case, this is not sufficient to persuade the Court that the errors had a substantial and injurious effect on the jury's verdict. While the Court agrees that introduction of Mr. Speek's and Detective Bergmann's testimony was in error—and the State deserves, appropriately, to be chastised for its questionable disregard of a citizen's constitutional rights—the Court cannot conclude under *Brecht* that the error was sufficiently prejudicial to warrant relief. The Court accordingly adopts Judge Tsuchida's R&R

with regard to Petitioner's first two grounds for relief.

### D.      Photomontage

Lastly, Mr. Vincent briefly objects to Judge Tsuchida's conclusion that Petitioner failed to demonstrate a constitutional violation with regard to his photomontage claim. Specifically, Petitioner asserts that the R&R failed to appropriately weigh the "corrupting effect of the suggestive[ness] against other factors indicating whether the identification may [be] independently reliable." (Dkt. No. 22 at 10.) However, upon review the Court concludes that Petitioner's objection is without merit.

As Judge Tsuchida explained, "reliability is the key to ascertaining the admissibility of identification testimony" where a defendant claims that an identification was the result of an unnecessarily suggestive procedure. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). The Court considers the following factors in making this determination: (1) the witness's opportunity to view the defendant at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty demonstrated by the witness at the confrontation; and, (5) the amount of time that has elapsed between the crime and the confrontation. *Manson*, 432 U.S. at 114 (citing *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)). The Supreme Court has made clear that these factors must be weighed against "the corrupting effect of the suggestive identification itself." *Manson*, 432 U.S. at 114.

Here, as Judge Tsuchida explained, the Washington Court of Appeals addressed Mr. Vincent's photomontage claim on direct appeal, concluding that the photomontage shown to the two children was not unduly suggestive. That Court explained as follows:

> In a statement for additional grounds, Vidal argues for the first time that the photomontage used to identify him as the perpetrator of the crimes against [J.H.] and [F.G.] was impermissibly suggestive, in violation of the due process clause of the Fourteenth Amendment.

>    An out-of-court photographic identification "meets due process requirement if it is not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Even where a procedure is suggestive, identification testimony will be admitted where the totality of the circumstances indicates the identification was reliable.
>
>    Generally, courts have found lineups or montages to be impermissibly suggestive "solely when the defendant is the only possible choice given the witness's earlier description." Where the witness's description refers to a distinctive characteristic "and the defendant's is the only photograph with such a characteristic, the risk that a misidentification will occur based solely or primarily upon that characteristic is substantially enhanced."
>
>    Here, [J.] described both driver and passenger as black men in their 20s, and the passenger as dark-skinned. At trial, [F.] described the passenger as a dark-skinned black male with short hair, looking angry. [J.] testified that the shooter was "dark black" and that "his eyebrow was down."
>
>    The montage contained black and white photos of six young black males. Vidal very noticeably has the darkest skin tone. Because this drew undue attention to his photograph, we look for countervailing indicia of the reliability of the identification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the identification; and (5) the time between the crime and the identification
>
>    [J.] saw Vidal twice, first as Vidal drove by, hanging out of the window and glaring at him, and later when the shot was fired at them. [J.] and [F.] were then approximately 12 feet away from Vidal for a few seconds. [J.] in particular had ample opportunity to view Vidal. Both boys focused a high degree of attention on the car and its occupants, and were able to describe the car and the firearm in detail and to a high degree of accuracy. Both boys identified Vidal from the photomontage almost immediately and with confidence. We conclude the identification procedure was not impermissibly suggestive.

(Dkt. No. 11, Ex. 3 at 17–19.)

In rejecting Mr. Vincent's claim, Judge Tsuchida accepted the state court's factual findings with regard to the suggestive nature of the identifications, though he also noted that the record demonstrates that the photographs at issue did not highlight a personal characteristic of Mr. Vincent, but instead, that the photograph itself was darker. (Dkt. No. 14 at 15.) Nonetheless, Judge Tsuchida concluded that even if Mr. Vincent and the state Court of Appeals are correct—

1 and the photograph drew undue attention to Mr. Vincent—the Court of Appeals reasonably
2 concluded that the identification procedure was not unduly suggestive under the appropriate law.
3 (*Id.*)
4       This Court agrees. It was a reasonable application of the law for the Washington Court of
5 Appeals to reject Mr. Vincent's photomontage claim in light of countervailing indicia of
6 reliability. Indeed, as noted above, the Court explained that the two boys had multiple
7 opportunities to view Mr. Vincent from a very close distance, correctly recalled details about the
8 green Cadillac, gun, and the car's occupants, and identified Mr. Vincent with confidence shortly
9 after the incidents occurred. (Dkt. No. 11, Ex. 3 at 17–19.) In light of these facts, the Washington
10 Court of Appeals did not unreasonably apply clearly established federal law in rejecting Mr.
11 Vincent's due process claim. Judge Tsuchida thus reached the correct conclusion, and Mr.
12 Vincent's objection is without merit.
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 14

## III. CONCLUSION

Having carefully examined the records, the governing law, and the balance of the record, the Court hereby ORDERS as follows:

1) The Report and Recommendation (Dkt. No. 14) is adopted;

2) Petitioner's § 2254 petition (Dkt. No. 1) is dismissed with prejudice; and

3) The Clerk is directed to send a copy of this Order to Petitioner, all counsel of record, and Judge Tsuchida.

DATED this 14th day of September 2013.

*John C. Coughenour*
John C. Coughenour
UNITED STATES DISTRICT JUDGE